UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GLADYS LEANDRO,

                          Plaintiff,

        -against-

WAL-MART SUPERCENTER STORE #2104,
WAL-MART STORES EAST, LP, WAL-MART
STORES, INC. and WAL-MART
ASSOCIATES, INC.,

                          Defendants.
-------------------------------------------------------------X

**OPINION AND ORDER**

19 Civ. 2108 (JCM)

      Plaintiff Gladys Leandro ("Plaintiff") brings this action against Wal-Mart Supercenter Store #2104, Wal-Mart Stores East L.P., Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. (collectively "Defendants") to recover for personal injuries allegedly suffered by Plaintiff when she slipped and fell in Defendants' store in Newburgh, New York (the "Wal-Mart Store") on July 12, 2015. (Docket No. 16).[1]  Plaintiff filed her original complaint[2] on March 12, 2018 in the Supreme Court of the State of New York, County of Orange. (Docket No. 4-1).  Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. (Docket No. 4).  Before this Court is Defendants' Motion for Summary Judgment, dated November 20, 2020, pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Motion"). (Docket No. 53).  Plaintiff opposed the Motion on January 25, 2021, (Docket No. 60), and Defendants replied on

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 32).

[2] The original complaint incorrectly named as a defendant Wal-Mart Supercenter Store #2637 for the store location, (Docket No. 4-1), but on April 24, 2019, Plaintiff amended her complaint (the "Amended Complaint") to name as a defendant Wal-Mart Supercenter Store #2104, the correct store location, (Docket No. 16; April 3, 2019 Minute Entry).

February 9, 2021, (Docket No. 62). For the reasons set forth below, the Court grants Defendants' Motion.

## I. BACKGROUND

The following facts are taken from Defendants' Statement of Material Facts submitted pursuant to Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, ("Def. 56.1"), (Docket No. 56), Plaintiff's Response to Defendants' 56.1 Statement of Material Facts, ("Pl. 56.1 Resp."), (Docket No. 61), and the exhibits[3] submitted by the parties in support of their contentions. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quoting *Novella v. Westchester Cnty.*, 661 F.3d 128, 139 (2d Cir. 2011)) (internal quotation marks omitted). Any disputes of material fact are noted.

On July 12, 2015, Plaintiff visited the Wal-Mart Store located at 1201 NY-300 in Newburgh, New York. (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1; *see also* Docket No. 16 ¶¶ 14, 43). Plaintiff alleges she suffered personal injuries from a fall in front of a "chicken warmer" between the check-out and the grocery sections of the store when she stepped on a piece of yellow pineapple that was about one-inch square. (Def. 56.1 ¶¶ 2-5; Pl. 56.1 Resp. ¶¶ 2-5; Docket No. 54-3 at 23:9-25:16).[4]

Plaintiff and her husband, Luis Reyes ("Reyes"), arrived at the Wal-Mart Store together that day and shopped for approximately thirty minutes. (Docket Nos. 54-3 at 14:22-15:16, 17:11-24; 54-4 at 4:20-5:3; *see also* Def. 56.1 ¶¶ 10-12; Pl. 56.1 Resp. ¶¶ 10-12). Reyes and Plaintiff

---

[3] Whereas the Court need only consider the cited materials in a Rule 56.1 statement, the Court may also rely on evidence in the record even if uncited. *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014); Fed. R. Civ. P. 56(c)(3).

[4] All page number citations refer to the page number assigned upon electronic filing unless otherwise noted.

took their groceries to the check-out section to pay for them, but Plaintiff realized she had the wrong type of milk and turned around, walking back towards the grocery section to exchange it. (Def. 56.1 ¶ 4; Pl. 56.1 Resp. ¶ 4; Docket Nos. 54-3 at 17:17-20, 20:3-17, 21:7-20; 54-4 at 5:20-6:3).  Plaintiff slipped while passing the chicken warmer, causing her left leg to bend and hit the ground with her right leg extended. (Def. 56.1 ¶ 5; Pl. 56.1 Resp. ¶ 5; Docket No. 54-3 at 29:13-33:8).  Plaintiff did not see any substance on the floor before she fell, but noticed a liquid and piece of fruit or pineapple on the floor afterwards.[5] (Def. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8; Docket No. 54-3 at 23:9-24:6).  Two other shoppers helped her off of the floor, where she stood until Wal-Mart employees arrived and someone provided a chair. (Docket No. 54-3 at 33:9-36:22).

Reyes testified that meanwhile, after Plaintiff left the cash register to exchange the milk, he paid for the rest of the groceries and loaded them into the car. (Docket No. 54-4 at 5:20-6:5). He returned to the store because Plaintiff "was taking long," and found her "sitting and tearing." (*Id.* at 6:4-8).  Plaintiff then showed Reyes the area of her fall, and Reyes dictated a statement to a Wal-Mart employee indicating that there was fruit where Plaintiff fell.[6] (*Id.* at 6:9-14; 8:4-20; *see also* Docket No. 54-3 at 36:25-37:7).  Plaintiff's son, Eddie Reyes, who had arrived to provide English language translation assistance, requested that a Wal-Mart employee call an ambulance, and Plaintiff was transported to St. Luke's Hospital. (Docket No. 54-3 at 10:20-24; 46:9-49:6).

Plaintiff described the piece of fruit that caused her fall as "yellow," "[a]lmost like the size of a grape," and "a little chunk . . . [that was] square." (Docket No. 54-3 at 24:7-25:10).

---

[5] Similarly, although Reyes saw the fruit on the floor after his wife slipped, he did not notice the debris when he passed through that area earlier. (Docket No. 54-4 at 8:21-25; 9:24-10:10).  Whereas Plaintiff denies that she passed through that area before her fall, Reyes testified that they both walked through it "before[hand]," "when [they] arrived in the store." (*Compare* Docket No. 54-3 at 25:24-26:8, *with* Docket No. 54-5 at 9:24-10:4).

[6] No such statement has been provided for the Court's review.

Although she did not recall whether it was "fresh," she testified that she did not know how long it had been on the floor and that the fruit was "wet" on her shoe. (*Id.* at 24:10-19; 25:17-19; 26:9-10). Similarly, Reyes noticed water or "liquid" surrounding the fruit, testified that the fruit was yellow pineapple, and described it as "dirty" from being stepped on with a shoe.[7] (Docket No. 54-4 at 9:5-10:10). However, Marianna M. Wilkinson ("Wilkinson"), the Wal-Mart Store's Customer Service Manager on duty at the time of the incident, testified that the fruit was a "green" grape, and described it as "fresh," "flat[tened]," "clean," and "smashed [once] from stepping on it." (Def. 56.1 ¶ 18; Pl. 56.1 Resp. ¶ 18; Docket No. 57-3[8] at 165:10-166:5, 170:3-6). She did not recall seeing any dirt or "juices" on or near the fruit. (Docket No. 57-3 at 169:14-170:2).

Every Wal-Mart employee is responsible for the safety of customers and trained to constantly scan the store for garbage and debris as well as immediately remove such items from the floor. (Def. 56.1 ¶¶ 17-18; Pl. 56.1 Resp. ¶¶ 17-18; Docket No. 54-5 at 8:4-10:23, 13:25-14:13). Huyler Van Wagenen ("Van Wagenen"), an Asset Protection Manager of the Wal-Mart Store who testified on behalf of Defendant Wal-Mart Stores, Inc., indicated that all personnel are required to do a store wide safety sweep every half hour as announced over the store P.A. system. (Def. 56.1 ¶ 13; Pl. 56.1 Resp. ¶ 13; Docket No. 54-5 at 11:9-22). A safety sweep is when employees walk around the store and confirm that the areas in their assigned sections – including the floors – are safe and clean, removing items and other debris as necessary. (Docket No. 54-5 at 11:23-13:20). In addition, Customer Service Managers are responsible for scanning

---

[7] Reyes testified that he took photographs of the fruit when he returned to the store, but he "got rid of them" when he replaced his cell phone. (Docket No. 54-4 at 8:21-9:4, 11:22-12:16).

[8] Citations to Wilkinson's deposition, at Docket Nos. 57-1 through 57-4, refer to the page numbers reflected on the deposition transcript itself rather than the page numbers assigned upon electronic filing. (*See* Docket Nos. 57-1–57-4).

and cleaning the front-end of the store where Plaintiff fell. (Def. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17).

Wilkinson testified that it was "everyone's responsibility" to inspect the store and make sure it was clean, and that she typically scanned the front-end of the store at least[9] twenty times per hour. (Def. 56.1 ¶¶ 18-19; Pl. 56.1 Resp. ¶¶ 18-19; Docket No. 57-1 at 23:12-24:9, 25:16-26:20). Employees were generally expected to remove debris and spills themselves, and to contact the store's maintenance team for cleaning assistance only when they were unable to clean the affected area, or a spill was larger than twelve inches in diameter. (*See* Docket Nos. 57-1 at 21:18-22:13; 57-4 at 187:15-189:11; *see also* Pl. 56.1 Resp. ¶ 24). When assistance from maintenance was required, employees would "guard," (Docket No. 54-5 at 44:2-12), or "stand by," the spill or debris, until the maintenance team arrived, (Docket No. 57-1 at 21:18-22:13).

Surveillance footage of the front-end of the Wal-Mart store on the date of the accident depicts Plaintiff slipping at 4:01:34 p.m. (*See* Docket No. 54-6).[10] The parties do not dispute that the footage depicts numerous Wal-Mart employees, including Wilkinson, working in the area of Plaintiff's fall in the twenty minutes preceding her fall. (*See* Def. 56.1 ¶ 14; Pl. 56.1 Resp. ¶ 14). At his deposition, Van Wagenen identified footage of a male employee loading chickens into the chicken warmer at 3:48:46 p.m., and noted that Wilkinson passed the area numerous times to "collect[] reshops, things left behind by customers when they change their mind at the registers." (Docket No. 54-5 at 55:9-56:20, 59:17-61:8). Van Wagenen also identified another Wal-Mart employee[11] passing the chicken warmer, the self-check-out area and a clearance rack at 3:57

---

[9] Whereas Defendants' 56.1 Statement of Material Facts asserts that Wilkinson scanned the front-end of the store "approximately" twenty time per hour, (Def. 56.1 ¶ 19), Wilkinson testified that "it c[ould] be more than 20 [times] because . . . that was the area that [she] was in most of the time," (Docket No. 57-1 at 26:4-17).

[10] The surveillance video was provided to the Court via a Google Drive link that was e-mailed to the Court's Chambers, copying defense counsel, on November 20, 2020. (*See id.*).

[11] Van Wagenen testified that the employee "might be [Wilkinson] again," but that "it[] . . . [was] hard to say." (*Id.* at 69:9-14).

p.m., in "the same area" as Plaintiff's fall. (*Id.* at 67:2-69:8, 74:14-75:4; *see also id.* at 76:12-77:11). Additionally, although Defendants argue that "not a single person [in the video] appears to [have] observe[d] any substance on the floor, nor is any substance observed on the video until after [P]laintiff's fall," (Def. 56.1 ¶ 16), the footage shows Wilkinson "pick[ing] up an item from the floor . . . behind" the area of the fall at 3:54:02 p.m.[12] (Pl. 56.1 Resp. ¶¶ 14, 16; Docket Nos. 54-6; 57-2 at 70:15-71:18; 57-3 at 150:22-151:13).[13] Wilkinson testified that she was working in this area "a lot" prior to the incident, as few as three minutes beforehand. (Docket No. 57-2 at 107:21-109:4; 57-3 at 172:7-13, 173:7-11). The surveillance footage also reveals several customers in regular clothes and Wal-Mart employees passing through the same area within the same timeframe, without looking at the specific location of Plaintiff's fall, including at 3:37:45, 3:39:41, 3:40:50 and 3:58:01 p.m. (Docket Nos. 54-6; 57-2 at 69:18-70:11, 121:18-25; 57-3 at 122:2-22; 123:3-13). The footage does not display any fruit or other substance on the floor or falling to the floor at any time prior to Plaintiff's fall. (Docket No. 54-6).

According to Wilkinson, she did not notice any fruit on the floor or see anything drop when she was working in the area before Plaintiff's fall, and she would have noticed the fruit if it was there because she was "actually cleaning up in front." (Docket No. 57-3 at 172:7-176:9). Nor did she pick up any fruit from the floor on the date of the incident. (*Id.* at 177:13-178:2). Moreover, nobody reported any debris on the floor in the area before Plaintiff's fall. (*Id.* at 166:6-14, 178:3-6; Def. 56.1 ¶ 24; Pl. 56.1 Resp. ¶ 24).

---

[12] Wilkinson could not recall specifically what she was "doing" at that moment, but testified that she was "probably picking up . . . clothes that fall off that rack or hangers." (Docket No. 57-3 at 151:4-11).

[13] Plaintiff's citations in support of the proposition that the surveillance footage shows Wilkinson "pick[ing] up an item from the floor" before the accident are incorrect, as the deposition testimony cited does not reference any such footage. (*Compare* Pl. 56.1 Resp. ¶ 14, *with* Docket No. 57-2 at 63, 65-66). The Court disregards this error, however, because Plaintiff's assertion is supported by the surveillance footage itself and other testimony from Wilkinson's deposition. (*See* Docket Nos. 54-6; 57-2 at 70:15-71:18; 57-3 at 150:22-151:13).

After the accident, Wilkinson was asked to call the maintenance team to request assistance in cleaning the area where Plaintiff fell. (Docket No. 57-4 at 188:8-189:11; *see also* Pl. 56.1 Resp. ¶ 24). Although she testified that she could have cleaned the area herself, (Docket No. 57-4 at 188:8-22), Wilkinson explained that "maintenance was called maybe because [the area] was sticky and had to be . . . cleaned up very well," (Docket No. 57-2 at 106:25-107:12). The surveillance footage confirms that within the next fifteen minutes, a maintenance team member arrived and mopped the same area where Plaintiff fell, "right behind the chicken stand." (Docket Nos. 54-6; 57-2 at 103:25-106:24; Pl. Resp. 56.1 ¶ 24). Additionally, Sue Higgins, another Wal-Mart employee, bent down to wipe something off of the floor using a towel or napkin in three separate places within the area of Plaintiff's fall. (Docket Nos. 54-6; 57-2 at 78:2-22, 92:7-98:16; 57-3 at 171:2-172:7). The footage also displays Wilkinson pointing at the same area of the floor, and removing items from the floor further behind the chicken warmer and next to the clearance rack, at 4:15:02 and 4:15:17 p.m., respectively. (Docket Nos. 54-6; 57-2 at 103:5-14).

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247–48 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prod.s, Inc.*, 530 U.S. 133, 150–51 (2000). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (quoting *Celotex*, 477 U.S. at 324; citing *Anderson*, 477 U.S. at 249–50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### B.  Burden of Proof on Summary Judgment

New York law governs the substantive slip-and-fall claim.[14]  However, federal law applies to procedural aspects of the claim. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  Because the moving party's burden of proof on a summary judgment motion is procedural, it is therefore governed by federal law. *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02 Civ. 4196 (NRB), 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) ("We find that the issue of what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, under the distinction created by *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) and its progeny, and accordingly is subject to federal rather than state law.") (citing *Celotex*, 477 U.S. 317); *see also Hughes v. United States*, No. 12 Civ. 5109(CM), 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014) (applying the federal burden of proof standard on a motion for summary judgment, explaining that "[e]ven though the substantive claims are governed under New York law, the procedural issues are determined under the federal standard."); *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 396 (E.D.N.Y. 2010) ("[T]he respective burdens that the parties bear in a summary judgment motion are procedural rather than substantive, and are thus subject to federal rather than state law.").

The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law in a slip-and-fall action. *See, e.g.*, *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 Fed. App'x 11, 12–13 (2d Cir. 2008) (summary order) (hereinafter "*Tenay II*"); *Vasquez v. United States*, 14-CV-1510 (DF), 2016 WL 315879, at *4–5 (S.D.N.Y. Jan. 15, 2016).  "Under New York law, '[a] defendant who moves for

---

[14] Because jurisdiction over this matter is based upon the parties' diversity of citizenship and the alleged acts occurred in New York, the parties agree New York law governs the substantive claims. (Docket Nos. 63 at 7 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)); 60 at 8-9).

summary judgment in a [sl]ip-and-fall case has the initial burden of making a *prima facie* showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it.'" *Vasquez*, 2016 WL 315879, at *4 (quoting *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 593 (2d Dep't 2012)).  Conversely, under federal law, the moving party "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely 'by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Id.* at *5 (quoting *Zeak v. United States*, No. 11 Civ. 4253(KPF), 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014); *see also Feis v. United States*, 394 Fed. App'x 797, 798–99 (2d Cir. 2010) (summary order)(applying New York substantive law and federal procedural law, finding that "contrary to plaintiff's assertions, defendant was not required to affirmatively disprove each element of plaintiff's [slip-and-fall] claim").[15]  Therefore, because the burden of proof on a motion for summary judgment is procedural and federal law applies, Defendants may meet their burden by "'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case,'" but need not "raise a *prima facie* case." *Hughes*, 2014 WL 929837, at *4 (quoting *Celotex*, 477 U.S. at 325).  If Defendants meet that burden, the burden then shifts to Plaintiff to present evidence on each element of the claim and

---

[15] *See also Tenay II*, 281 Fed. App'x at 12–13 (affirming district court's grant of summary judgment and noting that, although under New York law the moving party bears the initial burden of proof, under federal law "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions," and that therefore, where the non-movant bears the burden of proof at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (quotation marks and citations omitted); *Cruz v. Target Corp.*, No. 13 Civ. 4662(NRB), 2014 WL 7177908, at *3 (S.D.N.Y. Dec. 17, 2014) ("In federal court, it is the plaintiff who, as the nonmoving party, bears the burden of showing a genuine dispute of material fact, even though a New York state court would require the *defendant* to produce affirmative evidence on the key issue of whether the defendant had adequate notice of the spill.") (emphasis in original).

demonstrate that a genuine issue of material fact exists for trial. *See Celotex*, 477 U.S. at 322–24; *Holcomb*, 521 F.3d at 137.

## III. DISCUSSION

Under New York law, a plaintiff asserting a negligence claim must demonstrate "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 499 N.Y.S.2d 392, 392 (1985)) (internal quotation marks omitted). In the context of premises liability and slip-and-fall cases, "the plaintiff must demonstrate that the landowner created the condition that caused the injury, or that the landowner had actual or constructive notice of the condition." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004); *see also Decker v. Middletown Walmart Supercenter Store #1959 et al.*, 15 Civ. 2886 (JCM), 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017) ("[T]he plaintiff must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it."). Under New York law, Plaintiff bears the burden of proof on the elements of her premises liability claim at trial. *See Tenay II*, 281 Fed. App'x at 13.

Here, Defendants contend that there are no genuine disputes over whether they (1) created; (2) had actual notice of; or (3) had constructive notice of the discarded piece of fruit and/or spill that allegedly caused Plaintiff's slip and fall. (Docket Nos. 62 at 3-9; 63 at 8-14). In response, Plaintiff argues that issues of fact exist as to whether Defendants created or had actual or constructive notice of the condition. (Docket No. 60 at 8-11).

## A. Creation of a Dangerous Condition

Defendants argue there is no evidence that they created the dangerous condition at issue. (Docket No. 63 at 8). "To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant," *Vasquez*, 2016 WL 315879, at *7 (quoting *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014)), that is both "deliberate and intentional." *See Nussbaum v. Metro-N. Commuter R.R.*, 994 F. Supp. 2d 483, 493 (S.D.N.Y. 2014), *aff'd*, 603 Fed. App'x 10 (2d Cir. 2015) (hereinafter "*Nussbaum I*") (quoting *Olsen v. K Mart Corp.*, No. 04–CV–3648 (JMA), 2005 WL 2989546, at *4 (E.D.N.Y. Nov. 8, 2005)) (internal quotation marks omitted); *see also Gonzalez*, 299 F. Supp. 2d at 192 ("Finding that the defendant created the dangerous condition requires 'some affirmative act' on the part of the defendant."). Although circumstantial evidence "may be sufficient to defeat a motion for summary judgment" if it creates an inference that Defendants created the condition through affirmative acts, "'[a] plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard.'" *Vasquez*, 2016 WL 315879, at *7 (quoting *Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335 (JMA), 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009)).

There is no evidence showing how the fruit and/or liquid ended up on the floor. Plaintiff has not presented evidence that Defendants created the condition. Nor has Plaintiff pointed to any circumstantial evidence that would create an inference that Defendant created the condition. "Absent such evidence, Plaintiff[] cannot prove that Defendant[s] created the [dangerous condition], and summary judgment on that issue is warranted." *Strass v. Costco Wholesale Corp.*, 14-CV-06924 (PKC) (VMS), 2016 WL 3448578, at *4 (E.D.N.Y. June 17, 2016) (granting summary judgment where, *inter alia*, plaintiffs failed to identify any evidence that defendant created the condition at issue); *see also Cousin*, 2009 WL 1955555, at *7 (granting

summary judgment where no evidence supported an inference that defendant created the dangerous condition and noting that "New York courts routinely grant summary judgment in favor of defendants in such circumstances"); *Polvino v. Wal-Mart Stores, Inc.*, No. 03-CV-950S, 2006 WL 2711461, at *2 (W.D.N.Y. Sept. 20, 2006) (granting summary judgment where "[t]here [wa]s no evidence in the record relating to whom or what caused the hanger to be on the floor, or how long the hanger was there").

Plaintiff advances three meritless theories in support of her argument that issues of fact exist with respect to whether Defendants created the dangerous condition which allegedly caused her fall. (*See* Docket No. 60 at 6-7, 10-11). First, Plaintiff claims that the Wal-Mart employees who loaded the chicken warmer prior to her fall "could have" dropped "[y]ellow chicken skin and oil" onto the floor, which was later "mistaken for yellow fruit by the witnesses." (*See id.* at 6). However, there is no evidence in the record supporting this contention. All three witnesses who were present at the scene testified that the substance on the floor where Plaintiff fell was a piece of pineapple or a grape — not a piece of chicken or meat — nor did they mention seeing any stray pieces of chicken or oil in the vicinity. (Docket Nos. 54-3 at 23:9-18; 54-4 at 9:5-11; 57-3 at 165:10-13). Similarly, there is not a shred of surveillance footage displaying any items that the Wal-Mart employees carried towards the chicken warmer falling to the ground. (Docket No. 54-6). As such, this theory is entirely speculative.

Moreover, the "mere presence" of Defendants' employees loading the chicken warmer "in the vicinity of the accident area . . . is insufficient to support the inference that they created the dangerous situation." *See Polvino*, 2006 WL 2711461, at *2. Such passive activity is "legally insufficient" to defeat a motion for summary judgment. *See Lyman v. PetSmart, Inc.*, 16 Civ. 04627 (JCM), 2018 WL 4538908, at *6 (S.D.N.Y. Sept. 21, 2018). Indeed, "[t]he

intervening act of spilling [a substance] creates the [dangerous] condition and it is not attributable to . . . [D]efendant[s] absent either spil[l]age by . . . [D]efendants' employees or conduct on [D]efendants' part which demonstrably increases the risk of creating the condition." *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y. 1998); *see also Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220 (E.D.N.Y. 1998) ("The mere fact that a [dangerous condition] originated from store merchandise does not establish the [defendant's] creation of the condition, because, the [condition] is not a direct consequent of the defendant's passive activity of providing merchandise for sale.").

Plaintiff's second and third theories are that (1) Wilkinson could have created the condition by dropping the fruit and liquid while transporting "reshop" items on a cart next to the chicken warmer; and (2) Wilkinson and another employee could have "missed" the debris when removing other items from the floor before Plaintiff's fall. (Docket No. 60 at 6-7, 10). These arguments fail as well. With respect to the "reshop" items, Plaintiff has not introduced any evidence supporting a reasonable inference that Wilkinson dropped or spilled any of the items she was transporting, or handled any fruit on the date of the incident. *See Quarles*, 997 F. Supp. at 330; *see also Watts v. Wal-Mart Stores E., LP*, No. 16-CV-4411 (KMK), 2018 WL 1626169, at *7 n.12 (S.D.N.Y. Mar. 29, 2018) (granting summary judgment where surveillance footage showed no "potential source of the substance — for example, Defendant's employees' stocking pink liquid before the accident"); *Cousin*, 2009 WL 1955555, at *7 (granting summary judgment absent evidence that any of defendant's employees engaged in any activities that could have caused her fall on a puddle of water, such as "carrying or handling liquids within the interior of the restaurant" or "mopping, making repairs, or engaging in any other activity that could have caused a puddle to form"). With respect to Plaintiff's argument that the debris was "missed,"

(Docket No. 60 at 7), to the extent Plaintiff "relies simultaneously on the diligence of a [Wal-Mart] employee observing . . . and cleaning up [the fruit], as well as the negligence of the same employee in leaving [it] only partially cleaned," that theory is "internally inconsistent." *See Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 320 (E.D.N.Y. 2014). It is further undermined by Wilkinson's explicit testimony that she did not pick up any fruit from the floor at any time on the date of the incident.[16] (Docket No. 57-3 at 177:13-178:2).

Finally, Plaintiff impermissibly assumes that only a Wal-Mart employee — rather than a customer — could have dropped the fruit, an assumption which is not supported by any tangible evidence in the record.[17] *See Lionel*, 44 F. Supp. 3d at 320. Absent any evidence specifically linking Defendants' agents to the spillage, Plaintiff has failed to meet her burden and summary judgment is appropriate. *See id.*; *see, e.g.*, *Painchault v. Target Corp.*, No. 09–CV–1831 (NGG)(RML), 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011) ("The record contains no evidence that Target created the condition that caused Painchault to fall. The small puddle of liquid, apparently water, could have been caused by a customer, and nothing indicates that it was caused by a Target employee."); *Doona*, 680 F. Supp. 2d at 404 (rejecting plaintiff's argument

---

[16] Although Plaintiff notes that after the accident, the footage displays Wilkinson "pointing to . . . and picking up items she did not recall" from the floor where Plaintiff fell, (Pl. 56.1 Resp. ¶ 24; *see also* Docket No. 57-2 at 103:5-14), Plaintiff has not offered any evidence that these specific items came from Wilkinson's "reshop" cart or were present when Wilkinson was cleaning the area beforehand. Plaintiff's description of this evidence is also misleading because, whereas it suggests that Wilkinson forgot to pick up items that she should have removed from the floor before Plaintiff fell, Wilkinson testified that she simply did not remember what specific items she removed from the floor after the accident. (*Compare* Pl. 56.1 Resp. ¶ 24, *with* Docket No. 57-2 at 103:5-14).

[17] For this reason, the cases to which Plaintiff cites in support of her argument that Defendants created the dangerous condition are readily distinguishable. (Docket No. 60 at 11). Unlike the record before the Court, all of Plaintiff's cases involve distinct evidence supporting a reasonable inference that the defendants' employees, as opposed to any other individual, created the dangerous condition. *See, e.g., Gomez v. Shop-Rite of New Greenway*, 973 N.Y.S.2d 65, 65–66 (1st Dep't 2013) (finding issues of fact as to whether defendant created dangerous condition where plaintiff slipped on puddle of water adjacent to area where defendant's employees were unloading produce from boxes that were leaking); *Munoz v. Uptown Paradise T.P. LLC*, 890 N.Y.S.2d 829 (2d Dep't 2010) (denying summary judgment where prior to slipping on a puddle of water, plaintiff observed defendant's employees removing flowers from refrigerator units, causing water to spill onto the floor); *Roethgen v. AMF Babylon Lanes*, 816 N.Y.S.2d 568, 569 (2d Dep't 2006) (finding triable issue of fact as to whether defendants' employees caused "approach area" in a bowling alley to "be slippery by negligently operating an oiling machine used to oil the lanes").

that dangerous condition "could have resulted from one of [defendant's] employees' affirmative, although inadvertent, acts, such as accidentally spilling water from a cleaning bucket," where "[t]he evidence . . . d[id] not support a reasonable inference that . . . [defendant's] employee created the puddle, even if [it] d[id] not foreclose such a possibility"); *Tenay v. Culinary Inst. of Am.*, 04 Civ. 7467 (CM)(GAY), 2006 WL 8449264, at *1 (S.D.N.Y. Dec. 18, 2006), *aff'd sub nom. Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 Fed. App'x 11 (2d Cir. 2008) (hereinafter "*Tenay I*") (granting summary judgment where plaintiff could not offer any evidence beyond allegations or speculation linking defendant's employee to water spillage).

The record is devoid of any evidence regarding what caused the fruit and/or liquid to be on the floor. Defendants have pointed to this lack of evidence, and Plaintiff has not provided any proof of an affirmative act by any Wal-Mart employee that would suggest that Defendants created the condition. Accordingly, Defendants are entitled to summary judgment on the issue of whether they created the dangerous condition.

## B. Notice of a Dangerous Condition

Because there is no evidence that Defendants created the condition, Plaintiff must demonstrate either actual or constructive notice to establish her claim. *See Quarles*, 997 F. Supp. at 332. Plaintiff offers two theories of notice that she claims raise triable issues of fact and preclude summary judgment. Plaintiff argues that (1) whether Defendants had actual notice of the dangerous condition implicates credibility issues that cannot be resolved on summary judgment; and (2) Defendants had constructive notice of the dangerous condition because it was "visible and apparent" and existed for a "sufficient length of time," (Docket No. 60 at 9-11). The Court will address each theory of notice in turn.

### 1. Actual Notice of a Dangerous Condition

"A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall." *Cousin*, 2009 WL 1955555, at *6 (citing *Torri v. Big V of Kingston, Inc.*, 537 N.Y.S.2d 629, 630–31 (3d Dep't 1989)); *see also Nussbaum v. Metro-N. Commuter R.R.*, 603 Fed. App'x 10, 12 (2d Cir. 2015) (summary order) ("Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition.") (hereinafter "*Nussbaum II*") (citing *Matcovsky v. Days Hotel*, 782 N.Y.S. 2d 64, 65 (1st Dep't 2004)).

Here, there is no there is no evidence that Defendants were aware of the dangerous condition before the accident. *See Cousin*, 2009 WL 1955555, at *6. Plaintiff has not adduced evidence that Defendants' employees saw the fruit on the floor prior to her fall. Nor has Plaintiff submitted any evidence that Defendants received complaints about the fruit on the floor prior to her fall. To the contrary, Wilkinson — the only Wal-Mart employee who was present at the scene and who was deposed — testified that she did not see the fruit or receive complaints about it before the accident, even though she was assigned to cover the front-end of the store and was working in the area of Plaintiff's fall "a lot" within that timeframe. (Docket No. 57-3 at 166:6-14, 172:7-176:9, 178:3-6; Def. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17). Although Plaintiff argues that the issue of notice hinges on a credibility determination, *i.e.*, "whether the [Defendants'] witnesses can be believed after the video portrayed them to have been nonobservant of any condition while picking up items five minutes beforehand," (Docket No. 60 at 9), Plaintiff does not offer any factual support for this conclusory statement or point to any inconsistencies between the witnesses' deposition testimony and the surveillance footage that would create an actual credibility issue. *See Strass*, 2016 WL 3448578, at *4 (granting summary judgment where "[a]side from conclusory references to 'actual notice,' Plaintiffs d[id] not identify any evidence

that would support a finding that [Defendant] was, in fact, aware of the condition that allegedly caused [Plaintiff's] fall"). Such "[u]nsupported allegations that a witness lacks credibility are insufficient to create a genuine dispute of material fact" to defeat summary judgment. *In re Allou Distribs., Inc.*, 446 B.R. 32, 50 (Bankr. E.D.N.Y. 2011); *see also John Hancock Life Ins. Co. v. Perchikov*, 553 F. Supp. 2d 229, 238 (E.D.N.Y. 2008).

Because there is no direct or circumstantial evidence in the record that Defendants were aware of the fruit and/or liquid on the floor, Plaintiff fails to raise a genuine issue of material fact regarding actual notice. *See Henry v. Target Corp.*, 16-CV-8416 (JPO), 2018 WL 3559084, at *4 (S.D.N.Y. July 24, 2018) (no triable issues regarding actual notice where plaintiff failed "either (1) to identify a[n] employee who had knowledge of the floor's condition before her fall, or (2) to offer circumstantial evidence that would allow a reasonable jury to infer that an employee had actual notice"); *Decker*, 2017 WL 568761, at *6 (granting defendant's motion for summary judgment where there was no evidence that "[d]efendant's employees had observed the substance on the ground prior to [p]laintiff's fall" or that "[d]efendant had received reports of the condition").

## 2. Constructive Notice of a Dangerous Condition

"To prove liability based on constructive notice, the danger must have been 'visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it.'" *Nussbaum II*, 603 Fed. App'x at 12 (quoting *Lemonda v. Sutton*, 702 N.Y.S.2d 275, 276 (1st Dep't 2000)) (alteration in original); *see also Pinnock v. Kmart Corp.*, No. 04 Civ. 3160 (RMB), 2005 WL 3555433, at *3 (S.D.N.Y. Dec. 29 2005) ("Constructive notice can be shown by testimony that a condition is 'visible and apparent' and has existed 'for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it.'") (quoting *Heit v. Supermarkets Gen. Corp.*, 93 Civ. 6871 (JFK),

1995 U.S. Dist. LEXIS 13644, at *5 (S.D.N.Y. Sept. 20, 1995)).  Whereas Defendants argue that

Plaintiff cannot raise a genuine issue of material fact regarding constructive notice, Plaintiff

contends that material issues of fact exist regarding whether the fruit and/or liquid were visible

and apparent, as well as present for a sufficient length of time for Defendants to discover and

remedy them. (Docket Nos. 60 at 5, 10-11; 62 at 8-9; 63 at 10-14).

**i.  Visible and Apparent**

With respect to the first prong of constructive notice, Defendants argue that Plaintiff

failed to adduce evidence that the fruit and/or liquid on the floor were "visible and apparent"

such that Defendants should have discovered them prior to Plaintiff's fall. (Docket Nos. 60 at 3,

5; 63 at 10-11).  Plaintiff responds that there are issues of fact because witnesses from both sides

testified that the fruit was yellow and "large enough to be visible," and the liquid surrounding the

fruit took up enough space to require a mop to clean it up. (Docket No. 60 at 10).

To Plaintiff's point, the fact witnesses present on the day of the incident noticed the fruit

on the floor after (but not before) Plaintiff's fall. (Docket Nos. 54-3 at 23:9-24:12; 54-4 at 8:21-

25, 9:24-6; 57-3 at 165:2-20, 172:7-176:9; *see also id.*).  Both Plaintiff and Wilkinson also

described the fruit as about one-inch square or one-inch long. (Docket Nos. 54-3 at  24:20-25:16;

57-3 at 170:7-23).  Wilkinson testified that "maintenance was called maybe because [the area]

was sticky and had to be . . . cleaned up very well," and maintenance only assisted in clean-up

when Wal-Mart employees in the affected area were unable to clean it with a paper towel or a

spill was larger than twelve inches in diameter. (*See* Docket Nos. 57-1 at 21:13-22:13; 57-2 at

106:25-107:12; 57-4 at 187:15-189:11; *see also* Pl. 56.1 Resp. ¶ 24).

However, Plaintiff's argument fails for several reasons.  As a preliminary matter, Plaintiff

ignores that the surveillance video of the area where Plaintiff fell does not show any substance

on the ground before the accident.[18] (Docket No. 54-6).  The footage also shows several individuals — including Wal-Mart employees and customers — traversing the same area as few as three minutes before her fall, without stopping or appearing to notice anything on the ground. (*Id.*; *see also* Docket No. 63 at 10).  Although the footage shows Wilkinson cleaning the floor "behind" the area of Plaintiff's fall seven minutes before the accident, (Pl. 56.1 ¶ 14), Plaintiff does not proffer any testimony or other evidence that anyone saw the fruit and/or liquid in the specific location of her fall during this period.  Moreover, simply because Wilkinson removed a different item from the floor "behind" the area of Plaintiff's fall seven minutes beforehand does not mean that she saw the fruit and/or liquid which caused the accident. (*See id.*).  "[C]ourts have found insufficient evidence to raise a triable issue of fact regarding whether a condition was visible and apparent where a plaintiff did not see the condition prior to a fall, or offer evidence that others saw the condition prior to the fall." *Decker*, 2017 WL 568761, at *7 (collecting cases); *see also Castellanos v. Target Dep't Stores, Inc.*, No. 12 Civ. 2775(GWG), 2013 WL 4017166, at *6 (S.D.N.Y. Aug. 7, 2013) (finding plaintiff presented no evidence that dangerous condition was visible and apparent where both plaintiff and her fiancé testified that they did not see the condition until after plaintiff's fall and where no other witness saw the condition).

Plaintiff's fixation on the debris' visibility to all of the witnesses after her fall is also misplaced. (Docket No. 60 at 10).  "[T]he legally meaningful time to notice a defective condition is *before* an accident, not after." *Henry*, 2018 WL 3559084, at *5 (emphasis in original).  All of the witnesses present at the scene testified that they did *not* see any fruit or liquid on the ground

---

[18] As explained, although Reyes took photographs of the fruit after Plaintiff's fall, those photographs were "lost." (Pl. 56.1 Resp. ¶ 11; *see also* Def. 56.1 ¶ 11; *supra* n.7).  Thus, no such photographs are appended to any of the motion papers, nor would they be available for a potential jury's review.  Consequently, the Court cannot consider them in its analysis of whether the dangerous condition was visible and apparent.

prior to Plaintiff's fall, even though Wilkinson and Reyes testified that they passed through the same area at least once beforehand. (Docket Nos. 54-3 at 23:9-24:12; 54-4 at 8:21-25, 9:24-10:6; 57-3 at 165:2-20, 172:7-176:9; *see supra* n.13). Thus, none of the "[o]bservations after [the] accident occur[ed]" to which Plaintiff cites "are . . . evidence that [the] condition was visible and apparent prior to the accident." *See Melanson-Olimpio v. Wal-Mart Stores E., LP*, No. 16 Civ. 8735 (NSR), 2019 WL 1060625, at *5 (S.D.N.Y. Mar. 6, 2019); *see also Henry*, 2018 WL 3559084, at *5 (holding that "*post facto* observation of the water" was insufficient evidence to raise a triable issue of fact regarding whether dangerous condition was visible and apparent).

Under such circumstances, absent any evidence that the debris was visible and apparent *before* Plaintiff's fall, Plaintiff has failed to meet her burden of proof. *See, e.g.*, *Dranoff v. Sam's E., Inc.*, 16-CV-6482 (CS), 2017 WL 1437207, at *6 (S.D.N.Y. Apr. 20, 2017) (granting summary judgment absent photograph that showed "how big the wet area was" or provided "any other information that would allow the Court to infer how visible and apparent the water was"); *Decker*, 2017 WL 568761, at *7 (granting summary judgment where the alleged defective condition was not visible on the surveillance video and four other individuals walked through the area seconds before the accident without noticing the alleged condition); *Castellanos*, 2013 WL 4017166, at *6 (finding plaintiff presented no evidence that dangerous condition was visible and apparent where plaintiff testified that she did not see the condition until after the accident, where no other witness saw the condition, and where surveillance video showed customers and employees walking through the area where plaintiff fell without incident or seeming to notice the condition).

This is so despite the fact that some witnesses testified that the fruit was yellow in color, (Docket Nos. 54-3 at 24:7-9; 54-4 at 9:12-14), and that the maintenance team assisted in

mopping the surrounding liquid, (Docket No. 57-2 at 106:25-107:12; *see also* Docket No. 60 at 10).  Plaintiff's arguments boil down to impermissible conjecture that the debris' "color or volume" alone were sufficient to put Defendants on notice of their presence. *See Watts*, 2018 WL 1626169, at *6.  However, "[t]he mere existence of a foreign substance" on the floor, "without more, is insufficient" to create a triable issue of fact in a negligence cause of action. *See Lacey v. Target Corp.*, No. 13 CV 4098 (RML), 2015 WL 2254968, at *4 (E.D.N.Y. May 13, 2015) (quoting *Segretti v. Shorenstein Co., East L.P.*, 682 N.Y.S.2d 176, 178 (1st Dep't 1998)) (alteration in original) (internal quotation marks omitted).  Likewise, the "color of [a] substance does not necessarily render it visible and apparent." *Gisser v. Wal-Mart Stores E., LP*, 17 Civ. 5293 (JCM), 2018 WL 6493101, at *4 (S.D.N.Y. Dec. 7, 2018).  Therefore, Plaintiff's contention that Defendants were on notice of the condition just because of the fruit's color is unavailing. *See, e.g.*, *Watts*, 2018 WL 1626169, at *6–7 (holding that pink substance on the floor was not visible and apparent regardless of its color); *Decker*, 2017 WL 568761, at *7 (finding that yellow, egglike substance was not visible and apparent where it was not captured by surveillance video and there was no evidence that anyone had observed it prior to plaintiff's fall); *Lacey*, 2015 WL 2254968, at *3–5 (finding mere presence of "dark yellow" apple slices on the floor which caused plaintiff's fall insufficient to raise triable issue of fact where no witnesses observed them before the fall).

Similarly, Plaintiff's attempt to infer constructive notice by "deducing the amount of water on which she slipped" based on the fact that maintenance was called is "pure[ly] speculat[ive]." *See Rodriguez v. Wal-Mart Stores E., LP*, No. 16-CV-2603 (CS), 2017 WL 4045745, at *4 (S.D.N.Y. Sept. 11, 2017); (Docket No. 60 at 10); (*see also* Docket No. 57-2 at 106:25-107:12).  Indeed, Plaintiff offers no substantive evidence of the size of the spill or how

much liquid was actually on the floor. The only marginally relevant evidence on this topic is Wilkinson's equivocal testimony that the maintenance team did not, in fact, need to be called, but "maybe" was called because the area was especially "sticky." (Docket No. 57-2 at 106:25-107:12). However, the area's stickiness has no bearing on whether the amount of liquid was sufficiently large to render it visible and apparent, or whether anybody noticed it prior to Plaintiff's fall. *See Rodriguez*, 2017 WL 4045745, at *4 (granting summary judgment where no witness observed water on the floor before plaintiff slipped even though defendant's employees cleaned it afterwards); *Dranoff*, 2017 WL 1437207, at *6 (declining to infer constructive notice on summary judgment absent evidence of "how much water was on the floor" or "how big of an area it took up"). Therefore, this testimony does not support Plaintiff's argument that the spill's volume rendered the condition visible and apparent. (*See* Docket No. 60 at 10).

Since there is no evidence that the allegedly dangerous condition was visible and apparent, a verdict in Plaintiff's favor would be based on speculation and conjecture, rather than any findings of fact. As a result, Defendants are entitled to summary judgment on this issue. *See Doona*, 680 F. Supp. 2d at 404.

## ii. Length of Time

Defendants argue that with respect to the second prong of constructive notice, even if the fruit and/or liquid were visible and apparent, Plaintiff cannot raise a triable issue of fact because there is no evidence of how long the debris was on the floor prior to her fall. (Docket Nos. 62 at 5, 8-9; 63 at 11-12). Plaintiff maintains that there are issues of fact because (1) the hour-long surveillance footage preceding her fall does not display any items falling onto the ground, which raises an inference that the debris fell on the floor before the recording started; and (2) Wilkinson was working in the vicinity before the accident and therefore should have seen the debris. (Docket No. 60 at 10-11). Neither of these arguments is persuasive.

Even "[a]ssuming *arguendo* that the [debris] was visible and apparent," the dearth of evidence regarding when the debris "was spilled on the floor . . . is fatal to [Plaintiff's] claim of constructive notice." *See Quarles*, 997 F. Supp. at 332 (internal quotation marks omitted). Plaintiff offers no evidence regarding when the spill took place, and explicitly testified that she was unaware of how long the debris was on the floor. (Docket No. 54-3 at 25:17-19). "To get to a jury, [a plaintiff] is required to provide some basis for an inference that the spill was there long enough to blame [Defendants] for the accident." *See Casierra v. Target Corp.*, No. 09-CV-1301 (JG)(MDG), 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010); *see also Lacey*, 2015 WL 2254968, at *4 (granting summary judgment absent "material question of fact as to the length of time the apple was on the floor, as it could have been brown and oxidized before it fell on the floor"); *Stephanides v. BJ's Wholesale Club*, No. 12 CV 0083(CLP), 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) ("[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant."). This requires sufficient evidence, even if circumstantial, for a jury to reasonably draw an inference that the spill was there long enough for the defendant to reasonably discover. *See Castellanos*, 2013 WL 4017166, at *5. On the other hand, summary judgment is warranted "[w]here there is no direct or circumstantial evidence of how long a substance was on the floor," as under such circumstances, "it would be rank speculation to infer that it was there for a sufficient length of time." *Panagatos v. Petsmart, Inc.*, 18-cv-5032 (SJF) (AKT), 2020 WL 7343409, at *6 (E.D.N.Y. Dec. 14, 2020).

Plaintiff is correct that the surveillance footage does not show any items dropping to the floor in the sixty-one minutes before her fall at 4:01:34 p.m. (Docket No. 60 at 10-11; *see also* Docket No. 54-6). However, that does not necessarily support a conclusion that the debris must

have spilled prior to the commencement of the recording. (Docket No. 60 at 10-11). Rather, it is "equally plausible" that the spill occurred while the surveillance camera was recording, but was not captured simply because the camera was too far away from the spill's specific location or the one-inch piece of fruit was too small to be visible. *See Clark v. Target Corp.*, 18 Civ. 5865 (NRB), 2020 WL 2115348, at *5 (S.D.N.Y. May 4, 2020). Without evidence to the contrary, the debris "could have been . . . there only minutes or seconds before the accident and any other conclusion would be pure speculation." *See Gordon v. Am. Museum of Nat. Hist.*, 501 N.Y.S.2d 646, 647 (1986). Courts within this Circuit have found that surveillance footage supporting "competing" and "equally speculative[] . . . inferences" regarding the length of time during which a substance was on the floor does not constitute direct or circumstantial evidence of how long the substance was there, and thus, is insufficient to raise a triable issue of fact. *See Clark*, 2020 WL 2115348, at *5; *see also Panagatos*, 2020 WL 7343409, at *6 (finding no issue of material fact as to constructive notice where surveillance footage demonstrated that puddle formed sometime within the span of approximately one hour and fifteen minutes, but did not reveal the specific time "when that event occurred within that interval"); *Quraishi v. Port Auth. of New York & New Jersey*, No. 13 Civ. 2706(NRB), 2015 WL 3815011, at *10 (S.D.N.Y. June 18, 2015) (holding that lack of evidence of anyone spilling a liquid, carrying a beverage, or drinking a beverage during eight-minute surveillance clip before plaintiff's fall was insufficient to establish the length of time the liquid was on the ground). Thus, like Plaintiff's other arguments, Plaintiff's theory on this prong of constructive notice is devoid of any evidentiary basis, and summary judgment is required. *See Panagatos*, 2020 WL 7343409, at *6.

In addition, although "Defendant[s] need not offer any evidence showing that [their] cleaning and inspection practices would have revealed the existence of a dangerous condition,"

*see Vasquez*, 2016 WL 315879, at *8, they have provided substantial evidence of the Wal-Mart Store's safety protocols requiring employees to regularly scan the floors for unsafe conditions. *See Lyman*, 2018 WL 4538908, at *8. According to the store's policy, all employees must conduct a store wide safety sweep every half hour as well as constantly check for garbage and debris, and immediately remove any unsafe conditions. (Def. 56.1 ¶¶ 17-18; Pl. 56.1 Resp. ¶¶ 17-18; Docket No. 54-5 at 8:4-10:23, 11:9-22, 13:25-14:13). Customer Service Managers are also specifically assigned to scan and clean the front-end of the store, where the accident occurred. (Def. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17). Wilkinson testified that she scanned the front-end of the store at least twenty times per hour, and she was in the area of Plaintiff's fall "a lot" before Plaintiff fell — as few as three minutes beforehand — yet did not see any fruit or liquid on the floor, even though she was "actually cleaning up in front." (Def. 56.1 ¶¶ 18-19; Pl. 56.1 Resp. ¶¶ 18-19; Docket Nos. 57-1 at 25:16-26:20; 57-2 at 107:21-109:4; 57-3 at 172:7-176:9) The surveillance footage also shows Wilkinson removing items from the floor at 3:54:02 p.m., approximately seven minutes before Plaintiff's fall. (Pl. 56.1 Resp. ¶ 14, 16; Docket Nos. 54-6; 57-2 at 70:15-71:18; 57-3 at 150:22-151:13).

Generally, either amount of time is insufficient to establish that a defendant had constructive notice of a dangerous condition. *See Alami v. 215 E. 68th St., L.P.*, 88 A.D.3d 924, 925 (2d Dep't 2011) (finding no constructive notice where plaintiff slipped on laundry detergent spilled approximately ten minutes earlier and spill had been reported to defendant's employee approximately five minutes earlier); *Tkach v. Golub Corp.*, 696 N.Y.S.2d 289, 290 (3d Dep't 1999) (finding no material question of fact where supermarket employees ensured floor was free of spills every ten to fifteen minutes, and employee working on the date of the accident testified that she had checked the area five minutes before plaintiff fell and did not see any grease);

*McClarren v. Price Chopper Supermarkets Inc.*, 640 N.Y.S.2d 702, 702 (3d Dep't 1996) (holding that summary judgment was warranted where grocery store employees testified that area of fall was "inspected approximately 3 to 5 minutes prior to the accident and found to be clean and dry").

The Court also rejects Plaintiff's final argument that Wilkinson or any other employees' presence in the vicinity of her fall raises an issue of fact. (Docket No. 60 at 10). "[T]he mere existence" of a defendant's agent in the area of an accident "is insufficient to create a genuine issue of material fact regarding how long" a dangerous condition existed. *See Ricci v. Wal-Mart Stores E., LP*, 16 Civ. 6920 (JCM), 2018 WL 4308556, at *9 (S.D.N.Y. Sept. 10, 2018). Courts have consistently found that absent specific evidence that the condition existed when the agent walked by, or of the source of the condition, video footage of such activity is "inconclusive," and thus, does not constitute circumstantial evidence of the length of time of the dangerous condition's existence. *See Watts*, 2018 WL 1626169, at *7 n.12 (collecting cases); *see also Rodriguez*, 2017 WL 4045745, at *5 ("Plaintiff's argument that the liquid was on the floor for a sufficient amount of time before the accident because a Store employee walked through the relevant area three minutes before the fall . . . is without merit."); *Borenkoff v. Old Navy*, 831 N.Y.S.2d 220, 221 (2d Dep't 2007) (finding that plaintiffs failed to raise an issue of fact regarding constructive notice of a fallen hanger based on their theory that "several employees were working in the vicinity of the accident site"). Here, because Plaintiff has failed to introduce any non-speculative evidence that (1) the fruit and/or liquid were on the floor when Defendants' employees passed the area; or (2) the fruit and/or liquid came from an item any such employees were carrying, she cannot present facts from which a jury could conclude that Defendants had constructive notice of the dangerous condition. *See Watts*, 2018 WL 1626169, at *7 n.12.

In conclusion, there is insufficient evidence to create a genuine issue of material fact regarding how long the fruit and/or liquid had been on the floor. Consequently, Plaintiff is unable to establish as a matter of law that the dangerous condition existed for a sufficient length of time such that Defendants could discover and remedy it. *See Panatagos*, 2020 WL 7343409, at \*6. "Under *Celotex* . . . , the burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case. Because [D]efendants ha[ve] done so here," and Plaintiff has not presented evidence raising genuine issues of material fact, summary judgment is granted. *See Tingling*, 2003 WL 22973452, at \*2 (citation and internal quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk is respectfully requested to terminate the pending Motion (Docket No. 53), enter judgment for Defendants, and close the case.

Dated:    June 30, 2021
          White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge
